UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 12-cv-162-KKC

APRIL DAWN McKINNEY                              PLAINTIFF

v.                      <u>OPINION AND ORDER</u>

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY            DEFENDANT

\* \* \* \* \* \* \* \* \* \*

      This matter is before the court on the cross motions for summary judgment by Plaintiff April McKinney (DE 12) and Defendant Carolyn Colvin, the Acting Commissioner of Social Security (DE 13), regarding McKinney's application for Supplemental Security Income ("SSI"). For the reasons set forth below, the Court concludes that substantial evidence supports the Commissioner's denial of benefits and will grant the Commissioner's motion for summary judgment.

      On August 21, 2009, McKinney filed an application for SSI alleging disability due to a skin condition, diabetes, and cysts on her ovaries beginning on September 15, 2007 (AR 156). Prior to filing for disability, McKinney obtained a high school education and one year of college experience. Her previous employment included work in the food service industry as a cashier and grill cook. (AR 41-44).

      Upon review by the Social Security Administration ("SSA"), McKinney's application was denied initially and on reconsideration. (AR 13-30, 78-81). The Administrative Law Judge ("ALJ") then reconsidered the claim in a formal hearing held on September 29, 2010. Following the traditional five-step analysis outlined in *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d

1107, 1110 (6th Cir. 1994), the ALJ determined that McKinney had not engaged in substantial gainful activity since August 21, 2009, the date of her application. (AR 18). Additionally, he found that McKinney had severe impairments including dermatitis, obesity, and borderline intellectual functioning, but that such combination of impairments did not meet or medically equal one of the listed impairments. (AR 20). The ALJ determined that McKinney had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except that the work should require no greater than frequent handling and fingering, no exposure to water or heights, and no climbing of ladders, ropes, or scaffolding. Additionally, the ALJ found that McKinney was limited to simple instructions and tasks in a medium-to-low stress setting requiring minimal variations for independent judgment with only occasional public contact; that she was unable to perform any past relevant work; but that, based upon McKinney's age, education, work experience and RFC, there are a significant number of jobs in the national economy that McKinney was capable of performing including marker, textile checker, and office helper (AR 20-24).

Due to these findings, the ALJ issued a written decision denying McKinney's application for SSI on February 2, 2011, and the same day, McKinney filed a request for review with the Appeals Council. The Council denied the request on June 11, 2012, thus rendering the ALJ's decision as the final decision of the Commissioner. After exhausting all administrative remedies, McKinney filed this timely action pursuant to 42 U.S.C. § 405(g). (AR 1-6).

McKinney claims that the ALJ's decision was not supported by substantial evidence on the following grounds: (1) the ALJ failed to properly evaluate whether McKinney's skin condition met or medically equaled section 8.05 of the listing of impairments; (2) the ALJ failed to accord adequate probative weight to the opinion of the McKinney's treating physician; (3)

ample medical records support the treating physician's opinion; (4) the ALJ erred when he failed to find McKinney's degenerative disc disease and shortness of breath as severe impairments; (5) the ALJ improperly substituted his own opinion for that of the treating physician's regarding McKinney's lumbar X-Ray report of June 29, 2010 and MRI report of August 2, 2010; and (6) the ALJ failed to acknowledge that evidence generated by the SSA's consultative examiners in McKinney's 2007 application confirm that McKinney's skin condition was present and restrictive in 2007.

When reviewing decisions of the SSA, this court must defer to the decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

In response to McKinney's argument regarding her skin condition, the Court concludes the ALJ did not err by failing to find that McKinney's skin condition met or medically equaled listing 8.05. McKinney has not met her burden of proving that the severity of her impairment equaled that of the severity listed in 8.05. To meet this Listing, McKinney must have "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." As defined by 20 C.F.R. 404, subpt. P, app. 1 § 8.00(C)(1), "extensive skin lesions" include "those that involve multiple body sites or critical body areas, and result in a very serious limitation." Here, however, McKinney was not severely limited in her activities. She admitted that she is able to perform her own grooming (AR 51), to take care of her children while her husband is at

work, to cook for her mother, and to take her mother to the doctor and the grocery store. In addition, she is able to drive a vehicle independently (AR 299).

Additionally, the lesions must persist for at least three months despite continuing treatment as prescribed. While Dr. Karen Saylor, McKinney's treating physician, reported that the condition persisted for at least three months, she also noted that the lesions occurred every two months for a duration of three weeks. (AR 472). Although McKinney claims the condition has been present since 2007 (AR 152), she did not see a dermatologist until 2010 and then only at the request of her treating physician. (AR 447). Despite having been prescribed ointments in the past, there is no evidence to suggest that McKinney maintained treatment for three months or a period long enough to allow results. "Because treatment itself or the effects of treatment may be temporary, in most cases sufficient time must elapse to allow [the SSA] to evaluate the impact and expected duration of treatment and its side effects." 20 C.F.R. 404, subpt. P, app. 1 § 8.00(C)(4)(b).

Instead, there is evidence to suggest that McKinney tried using hydrocortisone for a couple months (AR 56), but stopped when she obtained no results. She used Kenalog cream but was told that if there was no relief, she should see a dermatologist. (AR 449). When the Kenalog cream proved ineffective, McKinney saw a dermatologist where she was prescribed Ultravate ointment. (AR 454). She used the cream for a couple months, but switched to Clobetasol ointment two months after her first dermatological visit because she could not afford Ultravate. Within that time, she also reported that her hands cleared up, but she was not sure if it was due to the ointment or a steroid shot she received for lung problems. (AR 489).

However, at the September 2010 hearing with the ALJ, McKinney testified that the ointment "helped a little" and that her hands were "quiet right now." (AR 48-49). She returned

to the dermatologist in October claiming that her condition was recurring. The dermatologist prescribed another ointment, but noted that if the condition persists, he would consider more systemic steroid shots (AR 489). Since McKinney is not severely limited in her functioning, has not maintained consistent treatment with one prescription plan, and testified her condition did get better at various times, there is substantial evidence to support the ALJ's decision that McKinney's condition did not meet or medically equal listing 8.05.

With regard to issue two, the Court concludes that the ALJ did not err when he discounted the treating physician's opinion. Substantial evidence exists to support affording this opinion negligible weight. An ALJ should only give a treating physician's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). In addition, an ALJ should give clear reason for the amount of weight they grant the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). The weight the ALJ gives is based on such relevant factors as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Id*. at 544; *See also* 20 C.F.R. § 404.1527(d)(2).

The ALJ attributed Dr. Saylor's opinion negligible weight because "Dr. Saylor's treatment entries do not record any medical or clinical findings elucidative of . . . restrictions." (AR 23). Dr. Saylor reported that McKinney was unable to sit, stand and walk a combined total of greater than six hours per day in addition to other restrictions. (AR 472). However, Saylor only treated McKinney for such medical issues as earache, respiratory infection, leg pain, raw

throat, and skin condition. (AR 447-451). Dr. Saylor also referred McKinney to a radiology specialist for back and hip pain because she did not specialize in that field. Although the test results from such specialist revealed "multifocal/multi compartmental degenerative changes in the lumbar spine," the doctor recorded that there was "no acute musculoskeletal radiographic findings." (AR 438). The next month, McKinney saw Saylor again, but this time reported only dermatitis, wheezing, and depression. (AR 447). In September, McKinney treated Saylor for a skin condition, sore throat, and leg pain. She did not mention hip or back pain. (AR 451). Yet, four days later, Dr. Saylor reported such work activity restrictions based on the patient's morbid obesity, degenerative disc disease, Polycystic Ovary Syndrome (PCOS), and renal stone. She gave no further evidence to support her assessment and referred to no other treating physician's findings. (AR 472). Although McKinney argues there is evidence to support this assessment, there is no evidence in the record to demonstrate the severity of such impairments or how they would restrict McKinney in her work activity. Thus, the ALJ was correct in discounting Saylor's opinion, because her opinion was not supported by clinical diagnostic techniques and because substantial evidence in the record exists that contradicts her conclusion.

Additionally, McKinney argues that ALJ Rising did not make "every reasonable effort" to recontact Dr. Saylor if he needed clarification of the basis for her opinion pursuant to Social Security Ruling 96-5p. In order for this duty to be invoked, however, the treating physician's evidence must not support her own conclusions, and the ALJ must not be able to ascertain the basis of the opinion from the evidence in the record. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 273 (6th Cir. 2010). The second prong of this analysis has not been met. Although the treating physician lists her reasons for her assessment, including morbid obesity, renal stone, PCOS, and degenerative disc disease, there is no objective evidence in the record to show how

6

these impairments would affect McKinney's work activity. Therefore, the ALJ gave Dr. Saylor's opinion negligible weight, not because the reasons for her assessment were unclear, but because they were not supported by objective medical evidence.

Regarding McKinney's back pain and shortness of breath, the ALJ was correct when he found these impairments not severe. "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). McKinney claimed that she could only stand for thirty minutes at a time, and that she could not walk five feet without her back hurting. McKinney compared her back pain to someone beating her in the back with a hammer. (AR 45). Her husband and mother-in-law also noted that McKinney had trouble with her back, and that the condition has persisted for about five years (Exhibits 13E, p.2; 14E, p.2). However, on her Function Report, McKinney reported she could walk about a mile before having to rest, and her daughter said the same. (AR 180, 169).

To reconcile this discrepancy, McKinney testified that her back pain had intensified this year. (AR 146). Yet, there is no objective evidence to prove her subjective complaints. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). For example, an X-Ray report from June of 2010 shows no acute musculoskeletal radiographic findings (AR 438), and an MRI report from August 2010 shows that there is no explanation for the right hip pain (AR 464). Although McKinney argues that doctors reported degenerative disc disease, the doctors never noted the severity of the disease, or how it would affect McKinney's functioning. "The mere diagnosis [of a condition]…says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863.

7

Additionally, McKinney reported that she could only walk five feet because she experiences shortness of breath. (AR 46-47). Yet, bronchodilator therapy administered at a pulmonary function laboratory resulted in an increase of flow volume. The report stated that the patient would benefit from continuing this therapy. (AR 470). Lastly, McKinney testified at her hearing that she is able to get up on her own and to independently do activities like use the bathroom and get dressed. She also occasionally drives a car, showing that she is not severely limited in her capabilities. (AR 51-52). Thus, substantial evidence exists to support the ALJ's finding that McKinney's back pain and shortness of breath are not severe.

Furthermore, McKinney's argument that the ALJ erred by substituting his own opinion for that of Dr. Saylor regarding McKinney's X-Ray and MRI reports is unpersuasive. An ALJ may not substitute his opinion for that of a treating physician; however, the ALJ is not required to cite the physician's test results verbatim. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). By summarizing the findings of the medical reports as showing "generally benign results," and "fail[ing] to identify an objective cause" for McKinney's symptoms, the ALJ was simply assessing the medical information in the record. *See Ford v. Comm'r of Soc. Sec.*, 114 F. App'x. 194, 197 (6th Cir. 2004). As discussed, substantial evidence supports the ALJ's decision that McKinney's back pain and shortness of breath are not severe.

Lastly, McKinney's arguments that the ALJ arbitrarily denied her request to reopen her previous SSI application from 2007 and that the ALJ failed to consider examinations contained therein are without merit. A claimant may ask that a final determination of a decision be reopened (20 C.F.R. § 404.987) for any reason so long as it is reopened within twelve months of the date of the notice of the initial determination. Otherwise, it may be reopened only on a showing of good cause. 20 C.F.R. §§ 404.987, 404.988(a). Here, McKinney asked for her case

to be reopened more than 12 months after the initial determination. Good cause exists for reopening a final determination if new and material evidence is furnished, if there was a clerical error in computation of benefits, or if the evidence, on its face, clearly shows that an error was made. However, McKinney does not argue any of these points, nor does she present evidence to support them. In fact, McKinney's attorney limited her request for reopening to one sentence in a two-sentence letter simply stating, "I request that Ms. McKinney's prior claims be reopened." (AR 117). At the close of the oral hearing, McKinney very briefly mentioned the issue again saying, "I had requested that a previous application be reopened. And I guess I just wanted to bring that up." Once again, she presented no evidence to support reopening. It is not the role of this Court to formulate the claimant's argument. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490-91 (6th Cir. 2006).

Additionally, *Drummond v. Comm'r of Soc. Sec.* is not applicable. Drummond stands for the rule that as long as there is no new evidence presented in a case, an ALJ is bound by *res judicata* to follow the ruling of a former claim. *Drummond*, 126 F.3d 837 (6th Cir. 2009). Here, however, McKinney argues that the ALJ failed to acknowledge evidence generated by the SSA's consultative examiners in a prior applications he filed in 2007, rather than arguing that the ALJ should have followed the ruling of the prior claim. Without further argument to the contrary, the ALJ was only responsible for considering all evidence presented on or after January 15, 2009, the day following the denial of McKinney's previous claim.

The ALJ properly applied the relevant legal standards in this case, and his decisions on all matters are supported by substantial evidence. Accordingly,

**IT IS ORDERED** that McKinney's motion for summary judgment (DE 12) is **DENIED**.

9

**IT IS FURTHER ORDERED** that the Commissioner's motion for summary judgment (DE 13) is **GRANTED**.

Dated this 30th day of September, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge